plaintiff. It is true the plaintiff took no action on account of the default in his coupons until he wrote the letter of January 4th, but there was no act he could consistently take. The whole amount could not be declared due until after January 1st. It is evident that the trial court did not give due consideration to the new evidence.

The judgment should therefore be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event. All concur, except COCHRANE, J., who dissents.

---

### McCORMICK v. ROCHESTER RY. CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1909.)

1. CARRIERS (§ 318*)—INJURIES TO PASSENGER—EVIDENCE.

Evidence *held* sufficient to warrant a finding that the injury to plaintiff's intestate, a passenger on a street car, was the proximate cause of his death.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1307; Dec. Dig. § 318.*]

2. DEATH (§ 99*)—ACTIONS—DAMAGES—AMOUNT.

A verdict for $12,958 for the death of a man 35 years old, apparently in perfect health, conducting a profitable business, and leaving a wife and daughter, is not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

3. TRIAL (§ 315*)—CONDUCT OF JURY—MANNER OF ARRIVING AT VERDICT.

Where individual jurors might have reached different conclusions from the evidence as to the precise amount of damages from a wrongful death, the verdict will not be set aside solely because it was the result of a compromise.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 740; Dec. Dig. § 315.*]

Williams, J., dissenting.

Appeal from Trial Term, Monroe County.

Action by Mary A. McCormick, as administratrix, against the Rochester Railway Company for the death of plaintiff's intestate. From a judgment for plaintiff for $14,390.18 and an order denying a new trial, defendant appeals. Affirmed.

The action was commenced on the 25th day of March, 1907, to recover damages resulting from the death of plaintiff's intestate alleged to have been caused solely through the negligence of the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

W. A. Matson, for appellant.
Eugene J. Dwyer, for respondent.

McLENNAN, P. J. The facts relating to the accident, which occurred on the 10th day of October, 1906, at about 7 o'clock p. m., are not in dispute. It is not claimed by the appellant that its negligence did not cause the accident, or that the deceased was chargeable with contributory negligence. Practically the only question presented by

the appeal is: Was the injury which decedent received the cause or the proximate cause of his death? He was a passenger on one of defendant's cars, being operated in the city of Rochester, N. Y., and at the time was standing on the rear platform. The car stopped at the corner of Caledonia avenue and Garden street for the purpose of letting off and taking on passengers. While so standing, another of defendant's cars, which was following, slid into or collided with it. The jar or collision, although not severe, caused him to fall backwards and strike the small of his back against a hook or projection at the rear end of the car. He fell to the floor, complained of having received an injury to his back, was helped up by other passengers and taken into the body of the car, where he rode to his destination, a short distance beyond, where he attended a party; but while there he complained of pain in his back, and soon after returned from there on the street car to his home. Upon retiring that night, his wife discovered that there was a black and blue spot at the small of his back at the place where he claimed he had come in contact with the hook or projection upon the rear end of the vestibule of the car upon which he was riding. Neither thought apparently that the injury was serious. On the following morning his family physician was called and he diagnosed the injury as a simple bruise, and he assured the decedent that he would soon fully recover from the effects thereof. As a result of such injury, which at first seemed so trivial, deceased was confined to his bed for 10 or 12 days, after which he was able to be up and around the house, but he remained indoors for 6 or 7 weeks. After that he went out of doors, walked and visited, and called at his place of business two or three times a day, always using a cane to assist him in walking. On the 14th day of January, after the accident, he was at his place of business practically the entire day and evening. On the evening of January 24th he attended a lodge meeting, traveling by street car from his home to the place where the lodge meeting was held, and walked up a steep stairway, consisting of 28 steps. Then he walked through an anteroom across the lodge room to the secretary's desk, where he immediately suffered a stroke of apoplexy, and soon became unconscious. He was taken home and remained unconscious until his death, which occurred seven days later, on January 31, 1907.

Prior to the injury the deceased, so far as he or his friends knew, was a perfectly healthy man. He weighed from between 175 to 180 pounds. He had attended regularly to his business, had never been sick, and, so far as known, was in a perfectly healthy condition, mentally and physically. After the injury he lost from 20 to 35 pounds in weight, and the injury produced a condition known as neurasthenia. After his death an autopsy was performed and a clot of blood, weighing 1½ ounces, was found in the left lateral ventricle of the brain. The arteries of the body were found to be in a sclerotic or hardened condition. The kidneys were apparently diseased, and the heart weighed 24 ounces, and was about twice the size of a normal heart. The immediate cause of death was determined to be cerebral apoplexy —the rupture of an artery in the brain. After the autopsy a portion of the brain, kidneys, and spinal cord was analyzed, and it was found that there was a sclerotic condition of the arteries, the kidneys showed that the patient was suffering from Bright's disease, and the spinal

cord was found to be in all respects normal. Several physicians called by the plaintiff testified, in substance, that in their opinions the injury which the plaintiff's intestate received was a contributory cause of his death. The medical witnesses called by the defendant testified that the death of plaintiff's intestate was in no manner caused by such injury. Whether or not such injury caused the death was practically the only question of fact submitted to the jury. Such issue was fairly submitted by the learned trial court, and I think it cannot be said that the finding of the jury upon that issue was contrary to or against the weight of the evidence. The important fact appears without contradiction that prior to the accident plaintiff's intestate was a healthy, strong man, attending to his business each day. He or his friends had no knowledge that he was suffering from any disease. Immediately after the accident he became sick, was confined to his bed for a considerable time, commenced to lose flesh and gradually declined in health and vigor until the day of his death, which occurred about four months later.

In view of those facts, which are uncontradicted, we think the testimony of the experts called by the defendant, who say, in substance, that the accident did not cause the condition referred to and subsequently his death, should not be accepted as against the testimony of the witnesses called by the plaintiff, who assert that in their opinions such condition and death did result because of the injury which the deceased received. The question whether or not such injury caused the death of the plaintiff under all the circumstances was fairly one of fact, and we can see no reason for disturbing the finding of the jury in that regard.

Neither can we say that the damages awarded by the jury were excessive. He was a man of 35 years of age and apparently in perfect health, conducting a profitable business, and left him surviving a wife and one daughter, and we think it cannot be said that under the evidence the amount awarded as damages for his death was excessive.

We do not think that the judgment should be reversed because the verdict is a "quotient" verdict, so called. The case of Driscoll v. Nelligan, 46 App. Div. 324, 61 N. Y. Supp. 692, would seem to be exactly in point. It was said in the headnote:

"Where the individual members of a jury might have reached different conclusions from the evidence as to the precise amount of the plaintiff's claim and of the defendant's counterclaim, the verdict rendered will not be set aside solely because it was the result of a compromise."

In this case there is nothing to indicate (except as the result of speculation) that each member of the jury did not determine that the plaintiff was entitled to recover, because of the death of her intestate, exactly the sum which was awarded.

We do not consider that any of the exceptions which have been called to our attention present error which require the reversal of the judgment.

We therefore conclude that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur, except WILLIAMS, J., who dissents.