LAURA A. MORGAN, complainant,

*v.*

ROBERT M. MORGAN, defendant.

[Decided November 24th, 1936.]

*Mr. Herman Golden* and *Mr. Milton M. Unger,* for the petitioner.

*Mr. Reginald A. Creighton (Mr. Thomas Brunetto,* of counsel), for the defendant.

GROSMAN, A. M.

This is an application by the defendant, Robert M. Morgan, to vacate the service of a writ of *ne exeat* under which he was arrested; and likewise that of an order to show cause why he should not be adjudged in contempt of this court for failing to pay the petitioner the sum of $15 per week alimony. The basis of the application is that, at the time such service was made upon him, the defendant was voluntarily in attendance upon the Essex county court of common pleas to answer an indictment for criminal desertion, and was then and there privileged from service of process and arrest in a civil action. *Michaelson* v. *Goldfarb, 94 N. J. Law 352; 110 Atl. Rep. 710.*

The underlying facts are these: Petitioner and defendant were married on the 26th day of June, 1907. One daughter, now of age and married, was born of the union. They cohabited until about the year 1933, and thereafter continued to occupy separate quarters in the same house until the institution of this suit. On March 28th, 1934, a petition for divorce from bed and board was filed by the petitioner against the defendant, charging him with having committed adultery with one Ethel A. Allan, in New York City and Washington, District of Columbia. No defense was interposed to this action, and on August 24th, 1934, a final decree was entered divorcing the parties from "bed and board" and directing the defendant to pay the petitioner the sum of $140 per month alimony, $150 counsel fee, and to furnish a compliance bond in the principle sum of $2,000.

Because of the defendant's recalcitrant and obstructive tactics, considerable difficulty was experienced by this court in fixing the amount of alimony to be paid by him. The matter was referred to one of our special masters to take testimony as to the petitioner's needs and the defendant's faculties, with direction "to recommend." The defendant appeared before the master on July 3d, 1934. He testified that his net income during the year, then last past, was less than $100. He offered a few nondescript bank statements and records of security transactions to support his claim. He also testified that he was then living at 112 Westfield avenue, Elizabeth, New Jersey. The hearing was continued to the 27th day of

July, 1934, and the defendant directed to produce "all" his bank vouchers and passbooks in substantiation of his testimony as to income. He contemptuously failed to appear before the master on the adjourned date or at any time thereafter. The special master reports that he disbelieves the defendant's testimony. This conclusion is warranted by the record. Exceptions were taken by the defendant to the master's report on the ground that there was no evidence before him to warrant his findings. These exceptions were overruled. What lack of evidence there may have been was due entirely to the conduct of the defendant. It was within his power to make a frank and complete disclosure of his assets and earning ability. He deliberately chose not to do so, and will not be heard to complain on this account. There was evidence, however, before the special master, that the defendant, some time prior to the institution of this suit, was employed as a manager in the Federal Reserve Bank for the District of New York at a salary of $7,000 per year; that subsequently he obtained employment as a security salesman and generally that he is thoroughly familiar with the security business. It was within his province, in view of the defendant's refusal to testify, to estimate his earning ability by reference to his income in the past, and his known capacity to earn were he to diligently apply himself to his business. *Robins* v. *Robins, 106 N. J. Eq. 198; 150 Atl. Rep. 340.*

Pending these complications before the master, all of the defendant's making, he permitted the petitioner to remain in the utmost penury. He left the State of New Jersey and went to New York, though according to his affidavits his domicile remained here. On July 17th, 1934, a writ of sequestration was issued out of this court in the hope that some money could be raised for the petitioner by a sale of the defendant's home in Montclair. This apparently came to naught. On February 26th, 1935, the defendant, though in arrears of his alimony payments some $1,540, petitioned this court for a modification of the award from $35 per week to $15 per week, and agreed to pay the sum of $400 on account of arrearages. The application was consented to by the petitioner because of her necessitous circumstances, and an order to this effect was

entered. He paid no more attention, however, to this modified order than to the original, though he did pay the $400 as agreed. On June 22d, 1936, an order was made directing the defendant to show cause on June 30th, 1936, why he should not be adjudged in contempt for failure to comply with the modified order of April 24th, 1935. At the same time a writ of *ne exeat* was issued for his arrest.

Because of the petitioner's destitution, the defendant had been indicted by the Essex county grand jury for the crime of desertion. He was apprehended in the city of New York on or about November 16th, 1934, and placed under arrest. He attempted to escape from the arresting officers, and in so doing stepped into the path of an oncoming automobile and sustained a fractured arm. He was confined to the criminal ward, Bellevue Hospital, in New York, and upon recovery he returned to New Jersey for the purpose of trial. It can hardly be said that this is a voluntary attendance upon our courts, but perhaps it may be technically so classified. Factually, the defendant agreed to come to New Jersey when he had no other alternative.

The defendant was represented in New Jersey by two solicitors, Messrs. Charles Clark and Thomas Doughty. Mr. Doughty was the defendant's chief counsel. Mr. Clark apparently took charge of the preliminary proceedings. The state was represented in connection with the indictment by the Honorable Felix Forlenza, an assistant prosecutor of the county of Essex. The trial upon the indictment was adjourned a number of times, and finally the prosecutor, desiring to dispose of the matter, notified Mr. Clark by letter dated June 15th, 1936, that he had placed the case of the *State* v. *Robert Morgan* on the calendar for trial for Wednesday, June 24th, 1936, at which time the matter must be disposed of. Several days prior to the trial date, however, Mr. Thomas S. Doughty, who apparently was to represent the defendant upon the trial of the indictment, called Judge Forlenza and told him that he would not be ready for trial on June 24th, 1936, because he was experiencing difficulty in getting his witnesses. He therefore requested an adjournment, which was granted to him. The prosecutor at the same

time informed Mr. Doughty that he had been told by the solicitor for the petitioner that, if the defendant would satisfy him that he was in fact destitute and unable to comply with the order of this court, he would consent to drop further proceedings. Judge Forlenza, according to his affidavit and testimony given by him before me, suggested to Mr. Doughty that it might be a good idea to have a conference between Mr. Golden, the petitioner's solicitor, Messrs. Doughty, Clark and Morgan, and he offered his services to arrange for such meeting. Messrs. Doughty and Clark, accompanied by the defendant, did thereupon, on the 24th day of June, 1936, attend the office of Judge Forlenza at the court house, in the city of Newark, to confer with Mr. Golden. They went there, not for the purpose of the trial, but for the purpose of furnishing to the petitioner's solicitor information concerning the defendant's income. Judge Forlenza, in offering his services to Mr. Doughty, did so out of kindness. It was not an official act on his part. The conference had nothing whatever to do with the trial upon the indictment which had previously been adjourned by agreement between Mr. Doughty and Judge Forlenza. I find this to be the fact.

It is the settled law of this state that a non-resident is privileged from arrest or the service of civil process while necessarily going to, attending at, or returning from, judicial proceedings in any court of this state. *Michaelson* v. *Goldfarb, supra.* This privilege is not merely personal to the defendant but also to our courts, to the end that the administration of justice may not be impeded by the fear of litigants or witnesses of arrest or service of process. *Nelograph Manufacturing Co.* v. *Scrugham, 133 App. Div. 750; 118 N. Y. S. 212; affirmed, 197 N. Y. 377; 90 N. E. Rep. 962; 27 L. R. A. (N. S.) 333; 134 Am. St. Rep. 886.*

This exemption, however, extends only to non-residents of this state and not to residents. *Kutschinski* v. *Kutschinski, 112 N. J. Eq. 341; 164 Atl. Rep. 560 (Court of Errors and Appeals)* ; *Brown* v. *Brown, 112 N. J. Eq. 600; 165 Atl. Rep. 643.* Service of civil process, even upon a non-resident, is not void but voidable. The exemption afforded a non-resident by law may be waived. If, however, he desires to

claim his immunity, it is incumbent upon him to do so by a proper notice to vacate the service. The notice must, of course, state the grounds of his objection with particularity, so that both the court and all parties interested may be apprised of the grounds upon which the application is based.

In the instant case, the petitioner was served with the writ of *ne exeat* and order to show cause in contempt, on the 24th day of June, 1936. On the 21st day of July, 1936, he served notice of an application to set aside the service of the writ of *ne exeat* and of the order to show cause. The grounds upon which he relies are set forth in the notice as follows: (1) That the service of the said writ was illegally made; (2) that at the time the said writ was served the defendant was voluntarily in attendance upon another court in a criminal proceeding to answer an indictment for desertion before the court of oyer and terminer and was privileged from service of process and/or arrest in a civil action.

I hold the first ground to be worthless. It is no more than a conclusion. Whatever merit there is to the notice must of necessity be predicated upon the second ground stated therein. It will be observed that this ground is limited merely to the proposition "that at the time of service, he was voluntarily in attendance upon another court in a criminal proceeding to answer an indictment for desertion." This fact, of itself, is not sufficient to entitle him to the exemption provided by law against arrest or service of process. In order that the exemption be available to him, a further necessary and indispensable element must be present, namely, that, in addition to his being in attendance upon a court of this state, he is also a "non-resident."

The petitioner fails to allege his non-residence, either in the notice or in the subsequent petition for the same relief filed by him on September 1st, 1936. It is evident that, if in fact the petitioner was a resident of this state, he was not immune from arrest or service of process.

I incline to the belief that the petitioner was in fact domiciled in this state at the time such service was made upon him. My conclusion is predicated upon his petition and affidavit filed in this cause on the 26th day of February, 1935, in con-

nection with his application to modify the final decree as to alimony. In paragraph 10 of his petition he states as follows: "After defendant had requested, petitioner in this cause left the premises 15 Edgewood road, East Orange, New Jersey, March 29th, 1934. For a considerable time he resided in the vicinity of East Orange, New Jersey, and as the only child of the marriage between petitioner and defendant, a daughter, was married and living with her husband in New Jersey, together with his associates within the State of New Jersey, he was actually holding his residence in the state, though temporarily, for economy, stopping in New York City, at times when not on the road in the pursuit and conduct of his business."

In paragraph 8 of his affidavit, annexed to this petition, he again repeats the foregoing allegation almost *verbatim*.

In paragraph 11 of said affidavit he amplifies his statement as to his residence in these words: "My residence so far as I have been able to keep it so, has been and will be in the State of New Jersey, except such times as on the road if employed, as at time of being taken to the hospital, or engaged in any employment requiring temporary living elsewhere, and at all times my whereabouts available should information be desired."

It is to be noted that the petitioner was arrested in the city of New York upon the indictment for desertion on or about the 16th day of November, 1934. His petition to modify the final decree in this cause as to alimony was filed on the 26th day of February, 1935. He alleges under oath that on November 16th, 1934, as well as on February 26th, 1935, he considered himself a resident of the State of New Jersey and intended in the future to continue as such resident. Residence in this connection is held to mean domicile. *Brown* v. *Brown, 112 N. J. Eq. 600; 165 All. Rep. 643.* The moving papers on his present application to vacate the service of the writ of *ne exeat* and the order to show cause does not charge that he is a "non-resident." I think that a fair inference may be drawn from the sworn statements of the petitioner on file in this cause, as well as from his omission to charge the fact to the contrary, that, at the time he was served

with the writ of *ne exeat* and order to show cause in contempt, he was actually domiciled in the State of New Jersey, though his residence may temporarily have been in New York for reasons of economy. It follows that the exemption from service of civil process in the state while attending judicial proceedings does not extend to the petitioner.

But, even though he were in fact a non-resident, his claim for immunity would have to be denied. The exemption covers a non-resident only while "necessarily going to, attending at, or returning from a judicial proceeding." He is not privileged from the service of process if in this state on other business. In the case of *Sampson* v. *Graves, 208 App. Div. 522; 203 N. Y. S. 729, 731, 732,* it was held that the privilege of a non-resident applies only to the trial of the action or some proceeding connected therewith and does not extend to a party attending the argument of an appeal.

In the case of *Brown* v. *Taylor, 174 N. C. 423; 93 S. E. Rep. 982; L. R. A. 1918B, 293,* it was held that a non-resident is not privileged, while within the state attending a sale under a court decree.

In the case of *Brown* v. *Brown, 112 N. J. Eq. 600* (at *p. 605*); *165 Atl. Rep. 643, 645,* Buchanan, vice-chancellor, holds that: "It may be pointed out, however, that the rule as stated in the authorities grants the immunity to the person 'while necessarily going to, staying at, or returning from court.' In the instant case the wife was not doing any of these things; she had come at the request of state troopers, in order to identify articles which she claimed had been stolen. It seems at least doubtful that the rule of privilege extends to such circumstances."

Similarly in the case at bar, the petitioner was not engaged in "going to, attending at or returning from a judicial proceeding." The trial upon his indictment had been adjourned from the 24th day of June, 1936, to a later date, at the request of his counsel, Mr. Doughty. Under the circumstances, even if the petitioner were a non-resident, which does not appear to be the fact, he is not privileged to claim a non-resident's exemption. His application to vacate the service of the writ of *ne exeat* and the order to show cause in contempt is accordingly denied.