Cooke, J.
(dissenting). I dissent and vote to reverse and order a new trial on the issues of both negligence and damages.
Carried to its logical conclusion, an affirmance here is indicative of the elimination of the concept of compromise verdicts in all cases, save those in which liquidated damages and fixed sums which may be calculated are demanded.
Generally speaking, since a verdict must be the product of a deliberate exercise of the jurors’ judgments (Hamilton v Ow-ego Water Works, 22 App Div 573, 575, affd 163 NY 562), a verdict which is clearly the result of a compromise and unwarranted by the evidence will not be permitted to stand (Friend v Morris D. Fishman, Inc., 302 NY 389, 390; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4402.23). Of course, in those matters where the amount demanded is unliquidated or where the amount to be recovered is not a fixed sum which may be derived by mathematical computation, a verdict should not be disturbed merely because of a reconciliation of differences of opinion among the individual jurors on the question of the damages (Newburgh Transfer & Stor. Co. v *187 Pure Oil Co., 259 App Div 910, affd 284 NY 293; McCormick v Rochester Ry. Co., 133 App Div 760, affd 198 NY 510; Hamilton v Owego Water Works, 22 App Div 573, 578, affd 163 NY 562, supra), but one which evolves from a compromise, not merely as to amount but as to liability as well, will be overturned (Parlato v Semmes Motors, 38 AD2d 844; Black-welder v Service Liq. Distrs. of Cent. N. Y., 36 AD2d 678; Lallo v Grant Co., 31 AD2d 941; Milliken v City of New York, 82 App Div 471; 8 Carmody-Wait, 2d, NY Practice, § 58.8).
This action was instituted to recover $450,000 for personal injuries sustained as the result of an incident which took place on May 20, 1966 when Rocco Figliomeni, then 14 and a special class student at the Eastwood Junior High School in the City of Syracuse, allegedly was struck on the head by a baseball thrown to him by his teacher, Joseph Gangemi, in the course of schooling. A companion action was commenced by the student’s father, Frank Figliomeni, who asserted a derivative cause with a demand for $75,000 for hospital and medical expenses, care of the son, and loss of services. The actions were tried together in October of 1971 and resulted in a verdict of $18,000 for the son and $20,000 for the father.
There was a sharp issue as to liability, as to whether appellants were responsible regardless of injuries, insofar as the teacher, Gangemi, testified that the thrown baseball hit Rocco’s glove and then went to the ground. He further related that, when one of the boys said Rocco broke or dropped his glasses, Gangemi asked if everything was all right and Rocco responded "Yes, okay.”
On the other hand, the injuries claimed on trial were severe, indeed. A surgeon who examined the boy on May 21, 1966 found him deeply unconscious with raised intracranial pressure and a right hemiparesis. A left caratoid angiogram was performed which showed that the arteries around the left frontal lobe were deformed by the swelling of the frontal part of the brain. An exploratory craniotomy was resorted to, during which a bruising over the membrane of the frontal bone and a comminuted depressed fracture of the left frontal bone were found. The bone fragments of the fractured area were removed, the brain was found to be very swollen and, upon opening the dura over the brain, there was discovered a large amount of bruising of the frontal lobe with hemorrhage beneath the thin membrane surrounding the brain. More bone was removed to reduce the increased pressure in the head. *188 Blood beneath the scalp flap was aspirated on several occasions. Infection developed and right hemiparesis progressed, and, in June, the incision was reopened and an additional amount of bone and the remainder of the bone flap were removed, leaving a huge area over the frontal temple lobes unprotected by any part of the skull or other material. In 1967, a plastic plate was inserted to cover the defect in the skull on the left side of the site of the original injury.
Following different seizures, during one of which Rocco fell and struck his head, he was admitted to a hospital in August of 1968 where he was again found to be deeply unconscious, in a very serious condition with increasing intracranial pressure and paralysis down the right side of the body. A left caratoid angiogram showed there was swelling of the right frontal lobe and, upon another exploratory craniotomy, a swollen edematous frontal lobe was found. After that operation, there was eventual regression and a pneumoencephalogram was done, which showed a shift of ventricles from the left to the right side of the head so that there was pressure on the left part of the brain. Again, there was surgery, during the course of which a large clot was found pressing on the hemisphere in the parietal region.
There was proof that at the time of trial the infant plaintiff had suffered and was suffering from posttraumatic epilepsy, with both Grand Mal and adversive seizures, as a direct result of the May, 1966 head injury, for which dosages of Delantin and phenobarbital were prescribed. The depressed fracture and subarachnoid hemorrhage were causally related. Although it was stated that these conditions would not limit life expectancy, the prognosis was that there would be frequent seizures which would be difficult to control and that Rocco would require prolonged medical attention the rest of his life, together with the necessity of living with his family or someone else for his lifespan.
Hospital bills of $13,955, surgeons’ fees of $3,146, anesthetist’s charges of $308 and ambulance bills of $46, for a total of $17,455, were stipulated. The jury was charged that Rocco’s claimed lost wages amounted to $4,587.20, to be added to his recovery if a verdict was awarded to him and if it was found that these wages were reasonable and lost. It was also charged that his life expectancy at the time of trial was 52 years and that the rate of hire of an orderly or attendant was $28 per *189 day, which should be taken into consideration, if the jury arrived at that point.
There is presented here the classic example of a compromise verdict. The amount awarded the infant son, by a 10 to 2 vote, was less than that granted the father on the derivative cause of action, the son’s award being approximately the amount of the medical specials (cf. Parlato v Semmes Motors, supra; Miller v Barker, Rose & Clinton Co., 173 App Div 186). If this plaintiff was entitled to recover at all, it was in an amount greatly in excess of that reported by the jury. In view of plaintiff’s life expectancy, the nature and extent of the skull and brain injuries, the extraordinary surgical procedures performed, the tragic residuals and their permanency, the court’s charge as to loss of earnings ($4,587.20) as being a part of the son’s recovery and to which instruction no exception was taken, and the plaintiff’s own right to recover for future, prospective and contingent expenses (Clarke v Eighth Ave. R. R. Co., 238 NY 246, 250-251), one must arrive at the inescapable conclusion of a compromise, such as was suggested in Wiegand v Fee Bros. Co. (73 App Div 139), where it appeared that "the rights of the defendant were bargained away upon the main issue whether it was negligent or not, in consideration of an understanding that it should not be beaten in too large an amount” (p 142). Parenthetically, the award which respondent asks this court to affirm is approximately 10 times greater than that of the jury which determined negligence.
Chief Judge Breitel and Judges Gabrielli and Wachtler concur with Judge Fuchsberg; Judge Cooke dissents and votes to reverse in a separate opinion in which Judges Jasen and Jones concur.
Order affirmed, with costs.