713 A.2d 572

RAYMOND ARNE, PIERRE AND LINDA ARNE, H/W, INDIVIDU-
ALLY AND AS CUSTODIANS FOR ALISON ARNE AND LAU-
REN ARNE, PLAINTIFFS–RESPONDENTS AND CROSS–AP-
PELLANTS, v. RONALD LIOTTA AND CAROL BROCK LIOTTA,
H/W, DEFENDANTS–APPELLANTS, AND JEANNETTE GAR-
RISON, DEFENDANT, AND ROBERT J. FOLEY, JR., DEFEN-
DANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 1, 1998—Decided July 10, 1998.

Before Judges HAVEY, NEWMAN and COLLESTER.

*Jeffrey P. Blumstein* argued the cause for appellants (*Szaferman, Lakind, Blumstein, Watter* and *Blader*, attorneys; *Mr. Blumstein*, on the brief).

*John A. Miller, Jr.* argued the cause for respondents/ cross-appellants Raymond Arne, Pierre and Linda Arne (*Kenney and Kenney*, attorneys; *Mr. Miller*, on the brief).

*Deborah Mason* argued the cause for respondent Robert Foley (*Horn, Goldberg, Gorny, Daniels, Plackter* and *Weiss*, attorneys; *Ms. Mason*, on the brief).

The opinion of the court was delivered by

COLLESTER, J.A.D. (temporarily assigned)

Defendants Ronald Liotta and Carol Brock Liotta appeal from a judgment of the Law Division striking their defense of the statute of limitations premised upon the New Jersey Mortgage Foreclosure Act, *N.J.S.A.* 2A:50–8, and entering judgment against them in the total amount of $220,654.21. Plaintiffs Raymond Arne and Pierre and Linda Arne cross-appeal from the provision of the judgment entered in favor of the defendant Robert J. Foley, Jr. in the event that this court vacates the provisions of the order for judgment in their favor and against the Liottas. We affirm the judgment of the Law Division.

In summary form the salient facts are as follows. In 1986, defendants Raymond and Carol Brock Liotta, his wife, were living in a house on Tara Way in Franklin Township, Hunterdon County. Mr. Liotta was employed by Exxon Research and Engineering Company in Clinton Township. With the assistance of Jeanette Garrison, a local realtor, the Liottas purchased a thirty-four acre plus tract off Spring Hill Road in Franklin Township. They obtained a construction mortgage for $750,000, $275,000 to go toward a partial pay-back of the land acquisition and $475,000 to construct a personal residence. By June 1987 the Liottas had

drawn down approximately two thirds of the $475,000 and could not obtain the remaining amount until a certificate of occupancy could be obtained from Franklin Township. The Liottas lacked approximately $100,000 to reach the point where the certificate would be issued. Through Ms. Garrison the Liottas obtained the additional financing from plaintiffs.

Ms. Garrison was related to Louis Arne, a widower about to move into a nursing home. Out of the $110,000 proceeds from the sale of Mr. Arne's home, it was estimated by his family that $10,000 for nursing home costs were needed for the next year, and they were willing to invest the remaining $100,000 at a good rate of return to serve Mr. Arne's future needs. Accordingly, plaintiffs loaned the money to the Liottas in exchange for a $110,000 balloon mortgage with a due date of July 29, 1988. The Liottas were then able to complete sufficient construction to receive the certificate of occupancy in November 1987 and obtain permanent financing from Prudential Home Mortgage Company, Inc.

The Liottas moved into their new house at the end of December 1987. In January 1988 Louis Arne died, and the parties entered into a second mortgage note on May 25, 1988 with a different piece of land pledged as security. At this time the Liottas had purchased pieces of contiguous land on Spring Hill Road and were developing and building a large spec house on that property. They received a commitment for a $740,000 construction loan from Hunterdon National Bank for that purpose.

On August 1, 1989 the mortgage loan with plaintiffs and the Liottas was again extended by way of a third mortgage note referencing another lot as security. The Liottas paid quarterly interest payments through the end of 1989. A fourth and final mortgage note for the July 1987 loan was signed on April 18, 1990 acknowledging that the note was past due and securing the loan by a second mortgage on the Liottas' residence behind the first mortgage of Prudential. No further payments of interest or principal were made by the Liottas after January 1990. In September 1990, Mr. Liotta was transferred to the Exxon re-

search complex in Baytown, Texas and moved to Texas with his family.

On June 30, 1991, Prudential informed the Liottas that they were in default on their first mortgage loan on the residence for failure to make a payment since March 1991. On August 30, 1991, Prudential declared the Liottas to be in default as of that date and demanded payment of the entire principal balance of $1,840,854.25 by September 9, 1991. Prudential initiated its foreclosure action two months later naming plaintiffs and others as parties whose mortgages would be cut off by a sale under Prudential's mortgage. Judgment was granted to Prudential in the requested amount with a sheriff's sale of the mortgaged property ordered to satisfy the mortgage obligation. The judgment referred to the Arnes' "non-disputing" answer in the matter. On February 12, 1993, the sheriff's sale took place with Prudential buying the property for $100 in excess of its lien.

In April 1994, plaintiffs filed their complaint against the Liottas for the $110,000 principal balance plus accrued interest and attorney's fees. Since more than one year had passed after the first mortgage on their residence had been foreclosed and the residence sold at sheriff's sale, the Liottas asserted the statute of limitations defense under the New Jersey Mortgage Foreclosure Act, *N.J.S.A.* 2A:50–8. Plaintiffs then amended their complaint to assert a legal malpractice claim against Foley, who had represented them in the mortgage foreclosure proceeding.

When all of the other defenses had been stricken, Judge Holston determined that there were factual issues as to the applicability of the statute of limitations and held a hearing under *Lopez v. Swyer*, 62 *N.J.* 267, 272, 300 *A.2d* 563 (1973), after which he held that the one year limitation provision of *N.J.S.A.* 2A:50–8 was inapplicable because of the exception noted in *N.J.S.A.* 2A:50–2.3. Accordingly, judgment was entered in favor of plaintiffs and against the Liottas in the amount of $220,654.21 and the legal malpractice action against Foley was dismissed. This appeal followed.

The New Jersey Mortgage Foreclosure Act, *N.J.S.A.* 2A:50–1 to—68, sets a one year limitation period for deficiency actions, but the Act does not apply to all scenarios involving the foreclosure of mortgaged properties and deficiency proceedings. *N.J.S.A.* 2A:50–2.3(b) provides that a deficiency action is not subject to the one year limitation period of *N.J.S.A.* 2A:50–8

> [w]here the mortgaged property is other than a one-family, two-family, three-family or four-family dwelling in which the owner or his immediate family resides at the time of institution of proceedings to collect the debt.

Judge Holston held that the Liottas did not meet their burden under the statute to show that the limitations of *N.J.S.A.* 2A:50–8 barred the action of plaintiffs on the mortgage note because the Liottas were not "residing" in the mortgaged property under *N.J.S.A.* 2A:50–2.3(b) when the foreclosure proceedings were initiated. After a careful review of the record and arguments of counsel, we determine that this finding was supported by adequate, substantial and credible evidence. *Rova Farms Resort, Inc. v. Investors Ins. Co. of America,* 65 *N.J.* 474, 484, 323 *A.2d* 495 (1974).

The applicable facts on summary judgment application are as follows. As early as January 1990, Mr. Liotta wrote to Raymond Arne advising him of a prospective job transfer to Texas and that he had directed a realtor to sell all of his properties in Franklin Township. On October 16, 1990, thirteen months before the filing of the foreclosure action by Prudential, Mr. Liotta applied for and received a Texas driver's license, and he registered his private automobile in Texas on April 4, 1991. Also in April 1991, he wrote to Pierre Arne advising that he had expected the house to be sold the previous summer and that additional prospects for purchase were being considered. Mail forwarding orders for the Liottas at the Franklin Township address ceased in 1991.

Ronald Liotta testified that his assignment to Texas was temporary as a "two year rotational assignment." Although he and his family went to Texas in September 1990, they left everything in their house except for some clothes and kept the utilities connected. The family also returned to New Jersey to spend vacations in

the house including Thanksgiving and the period of Christmas through New Year 1990. Mr. Liotta also said that he visited Exxon in New Jersey respecting his on-going scientific experiments and stayed in the Franklin Township house on these occasions. He testified that he tried to work out something with Prudential during 1991 and denied receiving a notice of default. He claimed that it was only when he learned Prudential was foreclosing on the property that he sought a permanent position with Exxon in Texas and that the permanent transfer was not effected until June 1992, over a year after the commencement of Prudential's foreclosure action in November 1991.

The Liottas argue for an expansive reading of *N.J.S.A.* 2A:50–2.3 to equate "residence" to "domicile" reflecting an intent that is different from mere occupancy. Our Supreme Court has defined "occupancy" as follows:

> Domicil is very much a matter of the mind—of intention. One may be acquired, or changed to a new one, when there is a concurrence of certain elements; *i.e.,* an actual and physical taking up of an abode in a particular state accompanied by an intention to make his home there permanently or at least indefinitely and to abandon his own domicil. A person has the right to choose his own domicil, and his motive in doing so is immaterial. . . . A very short period of residence in a given place may be sufficient to show domicil, but mere residence, regardless of its length, is not sufficient. It has been said that concurrence, even for a moment, of physical presence at a dwelling place with the intention of making it a permanent abode, effects a change of domicil. And once established, the domicil continues until a new one is found to have been acquired through an application of the same tests.
>
> [*Lyon v. Glaser,* 60 *N.J.* 259, 264, 288 *A.*2d 12 (1972)].

While there is no reported decision defining the concept of residence under *N.J.S.A.* 2A:50–2.3, we are satisfied that the statutory reference to residence is not the equivalent of "domicile" and that the two terms are not to be treated as convertible terms absent specific indication of legislative intent to that effect. *See, e.g., State v. Garford Trucking,* 4 *N.J.* 346, 353, 72 *A.*2d 851 (1950) ("domicile" and "residence" deemed not the same for reciprocal recognition of motor vehicle registration); *Sullivan v. Saylor,* 79 *N.J.Super.* 1, 5, 190 *A.*2d 193 (App.Div.), *certif. denied,* 40 *N.J.* 506, 193 *A.*2d 141 (1963) (terms held not the same for purposes of

unsatisfied claim and judgment funds); *DiFiore v. Erie–Lacka-wanna R.R. Co.*, 67 *N.J.Super.* 267, 269–70, 170 *A.*2d 521 (Law Div.1961) (substituted service upheld where member of the military service deemed not a resident of New Jersey during the time he was stationed abroad).

Cases interpreting "residence" and "domicile" as interchangeable involve matters of jurisdiction, which is not an issue in this case. *Lyon, supra,* 60 *N.J.* at 263–64, 288 *A.*2d 12 (inheritance transfer tax); *Morgan v. Morgan,* 15 *N.J. Misc.* 101, 107, 188 *A.* 258 (Ch.1936) (immunity to service of process while in this state for limited purpose of attending court), *aff'd,* 122 *N.J. Eq.* 2, 192 *A.* 508 (E. & A.1937); *In Re Estate of Dorrance,* 115 *N.J. Eq.* 268, 274–75, 170 *A.* 601 (Prerog.Ct.1934), (inheritance transfer tax), *aff'd,* 116 *N.J.L.* 362, 184 *A.* 743 (E. & A.), *cert. denied, Camden Safe Deposit and Trust Co. v. Martin,* 298 *U.S.* 678, 56 *S.Ct.* 949, 80 *L.Ed.* 1399 (1936); *Brown v. Brown,* 112 *N.J. Eq.* 600, 602–03, 165 *A.* 643 (Ch.1933) (immunity to service of process); *see also Antonelli v. Antonelli,* 14 *N.J.Super.* 580, 586, 82 *A.*2d 482 (Ch. Div.), (equating residence with domicile under the "bona fide residence" required by *N.J.S.A.* 2A:34–8 or –10 for jurisdiction over petitions for divorce of nullity), *rev'd on other grounds,* 16 *N.J.Super.* 439, 84 *A.*2d 753 (App.Div.1951); and *Renner v. Renner,* 13 *N.J. Misc.* 749, 762–63, 181 *A.* 191 (Ch.1935) (same). For voting purposes residence is also nominally equated with domicile, *see State v. Benny,* 20 *N.J.* 238, 252, 119 *A.*2d 155 (1955); *In Re Petition of Kriso,* 276 *N.J.Super.* 337, 341, 647 *A.*2d 1373 (App. Div.1994).

To adopt the Liottas' interpretation of "residence" as synonymous with "domicile" would incorporate the concept of subjective intention into *N.J.S.A.* 2A:50–2.3(b) that is inconsistent with the statutory language, "resides at the time of institution of the proceedings to collect the debt." Moreover, such an interpretation is not supported by the legislative intent to protect debtors from being ejected and barred from their homes. Such a statutory reading also conflicts with the overall purpose of the Mortgage

Foreclosure Act since property owners living outside their homes could insulate themselves from deficiency actions through an assertion of intention to return to the residence.

Therefore we find defendants' argument unpersuasive and affirm the holding of Judge Holston that defendants were Texas residents so that the exception of *N.J.S.A.* 2A:50–2.3(b) is inapplicable and plaintiffs' action is therefore not time-barred by *N.J.S.A.* 2A:50–8.

The other issues raised on appeal and cross-appeal are either clearly without merit or rendered moot by this opinion. *R.* 2:11–3(e)(1)(E).

Affirmed.