79 N.J. Super. 1 (1963)
190 A.2d 193
FRANCIS W. SULLIVAN AND PROVIDENT TRADESMENS BANK AND TRUST COMPANY, A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA, EXECUTORS OF THE ESTATE OF J. GRIFFITH BOARDMAN, DECEASED, PLAINTIFFS-APPELLANTS,
v.
H. DURSTON SAYLOR, II, ADMINISTRATOR OF THE ESTATE OF SAL J. CIAVARELLI, DECEASED, AND HERMAN RAVITCH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1963.
Decided April 11, 1963.
*2 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Charles H. Nugent argued the cause for appellants.
Mr. Martin F. Caulfield argued the cause for respondents (Messrs. Hannold and Hannold, attorneys).
*3 The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an appeal from an order denying the plaintiffs' motion for payment by the Treasurer of the State of New Jersey of funds from the Unsatisfied Claim and Judgment Fund (N.J.S.A. 39:6-61 et seq.). The sole question for determination is whether plaintiffs' decedent is a "qualified person" within the meaning of N.J.S.A. 39:6-62, and thus entitled to payment.
The decedent, J. Griffith Boardman, was killed instantly on August 12, 1960 while operating a motor vehicle in Gloucester County, New Jersey, as the result of a head-on collision caused by the negligent operation of another automobile operated by defendants' decedent, Sal J. Ciavarelli. Ciavarelli was an uninsured motorist who was illegally operating the automobile. Suit against Ciavarelli was instituted by plaintiffs, executors of Boardman's estate, and counsel for the Unsatisfied Claim and Judgment Fund consented to the entry of judgment against defendant Saylor, executor of the estate of Ciavarelli, for the maximum amount payable from the Fund, to wit, $10,000, but without prejudice as to the matter of qualification.
Among other requirements, the Unsatisfied Claim and Judgment Fund Law contemplates that only "qualified persons" may be paid out of the Fund. N.J.S.A. 39:6-62 defines a "qualified person" as follows:
"`Qualified person' means a resident of this State or the owner of a motor vehicle registered in this State or a resident of another State, territory, or Federal district of the United States or Province of the Dominion of Canada, or foreign country, in which recourse is afforded, to residents of this State, of substantially similar character to that provided for by this act."
The parties have agreed that the only issue presented here is whether Boardman was a "resident of this State" for purposes of this statute.
Mrs. Boardman, widow of the decedent, gave the following testimony. She and Boardman were married in Philadelphia in 1934. He was in the insurance business and his headquarters *4 were in Philadelphia. He voted in Philadelphia, and their children went to school there. The death certificate listed Boardman's address as being in Philadelphia, where the family had a home. Boardman was a member of the Philadelphia-Delaware Bridge Commission and was appointed as a resident from Pennsylvania. His will was probated in that state. He had been a member of the board of directors of a Philadelphia bank.
In 1946 the Boardmans purchased a home as tenants by the entirety in Strathmere, Cape May County, New Jersey. This home was apparently sold in 1952, when another home was purchased by the couple, also in Strathmere. The family would live in this home during the summers, and Boardman frequently lived in this home at other times during the period from April to November. This apparently was due to the fact that he had business interests in New Jersey in this area. He was an officer of the Atlantic City Racing Association, and part owner of a large motel in Atlantic City. In the period from March to November he "usually stayed" at the Strathmere home, which was characterized as being as comfortable and as well furnished and maintained as the Philadelphia home. During such periods he would go back and forth to Philadelphia, but "not every day * * * because his interest in the race track kept him there, and during the racing season he was there constantly."
Boardman owned, in addition to the homes mentioned above, about "six blocks" worth of real estate in Strathmere; he was a member of a golf club and a yacht club in New Jersey in the Strathmere area, and he had three boats which he kept on the bay in Strathmere. Since the Boardmans' marriage it was their custom to spend their summers in New Jersey. He had told his wife that it was his intention to make Strathmere their exclusive home when he was able to retire from business. At the time of his death Boardman was 57 years of age.
On the foregoing evidence the trial judge ruled against the plaintiffs, and this appeal followed.
*5 Only three reported cases dealing with the general problem have been found  Collins v. Yancey, 55 N.J. Super. 514 (Law Div. 1959); Continos v. Parsekian, 68 N.J. Super. 54 (App. Div. 1961); and Maddy v. Jones, 230 Md. 172, 186 A.2d 482 (Md. Ct. App. 1962).
In Collins v. Yancey qualification was declared on behalf of an itinerant cook who had been living and working in Linden about six months when he was injured. Although he had originally come from Virginia, and returned to his sister's home there for convalescence after leaving the hospital, the court found that the legislative policy behind the act was applicable in that instance. We agree with that result. Residence does not necessarily mean domicile under this statute. New Jersey was the only state of residence of the claimant in Yancey for the time being. In the Continos case we denied qualification in the case of a Greek citizen who had been in this country under a student visa since 1956. When the accident occurred, June 14, 1958, he had been living in a rented room in Newark for two weeks while working in New York City. His schooling before and after the accident had been pursued in Oklahoma. His only other previous contact with New Jersey had been a stay of one month during the summer of 1957. We held the claimant to be a mere sojourner, not a resident.
In the Maryland Maddy case, supra, the court equated "residence" with domiciliary status and denied relief on that flat ground. As indicated above, we do not take that view. As in Yancey, supra, one may be a resident of this State within the intent and policy of the act although his domicile is elsewhere.
None of the foregoing decisions are directly pertinent in deciding the present case. The problem here is whether a primarily summer residence, maintained and used concurrently with the occupancy of another residence in a state of which the subject is a domiciliary and which he clearly regarded as his principal place of permanent abode, can be the basis for a claim that the subject is a resident of this State *6 within the intention of the statute. Our conclusion is in the negative, although the issue is concededly debatable.
The very language of the statutory definition suggests to us that the Legislature contemplated that, generally speaking, a prospective claimant would be either a "resident" of this State or a "resident" of another, not of two states simultaneously. If he were a resident of this State, he would qualify; if a resident of another (unless owner of a motor vehicle registered here), he would not qualify unless his home state had a reciprocal law available to a New Jersey resident. It therefore seems to us that where the state of which the claimant is a domiciliary resident has no such reciprocal law, our Legislature did not intend him to be able to qualify merely because he had a secondary residence in this State.
It may also be noted that New Jersey residents must register their vehicles with our authorities. N.J.S.A. 39:3-4. The incidence of insurance on such vehicles increases the fund from which payments under the presently involved statute are made. While, of course, a resident nonowner of a motor vehicle qualifies under the Unsatisfied Claim and Judgment Fund Law, a summer resident like the decedent typically does not register his personal motor vehicle here, but rather in the state of his principal residence or domicile. That type of "resident" therefore does not characteristically contribute to our Fund through his insurance premiums. Reading the cited statutes as in pari materia, there thus appears further evidence militating against the position of the plaintiffs in respect of the probable legislative intent in this matter.
Judgment affirmed.