[Civ. No. 56512. Second Dist., Div. Three. Dec. 8, 1980.]

FRANCISCO CABRAL, Plaintiff and Respondent, v.
STATE BOARD OF CONTROL, Defendant and Appellant.

[Civ. No. 57279. Second Dist., Div. Three. Dec. 8, 1980.]

GABRIEL VASQUEZ, Plaintiff and Respondent, v.
STATE BOARD OF CONTROL, Defendant and Appellant.

**COUNSEL**

George Deukmejian, Attorney General, and Barbara A. Noble, Deputy Attorney General, for Defendant and Appellant.

Oscar H. Gutierrez and John Trapani for Plaintiffs and Respondents.

Peter Scheif, Carlos Holguin, Fred Okrand and Rees Lloyd as Amici Curiae on behalf of Plaintiffs and Respondents.

**OPINION**

**COBEY, Acting P. J.**—We have consolidated these two appeals on motion of their common defendant, the State Board of Control (hereafter

Board), since both present the same fundamental issue, i.e., the validity of a particular regulation of the Board (Cal. Admin. Code, tit. 2, § 649.12) defining the term "resident of California" as used in the Victims of Violent Crimes Act (hereafter Act). (Gov. Code, §§ 13959-13969.1.)[1]

The trial court in these two administrative mandamus proceedings concluded that this regulation was both illegal and in violation of the equal protection provisions of both the federal and state Constitutions. Since we propose to affirm the trial court on the first ground, we do not reach the second ground, particularly as it involves the resolution of constitutional questions. (See *Cucamonga County Water Dist. v. Southwest Water Co.* (1971) 22 Cal.App.3d 245, 260 [99 Cal.Rptr. 557]; *Bayside Timber Co. v. Board of Supervisors* (1971) 20 Cal.App.3d 1, 5-6 [97 Cal.Rptr. 431].)

FACTS

Francisco Cabral and Gabriel Vasquez each sustained severe head injuries in June and August 1975 when the former was beaten with pool cues in the back room of a bar by three assailants and the latter was attacked in an alley by four youths with possibly a tire iron. Cabral and Vasquez thereafter duly filed with the Board applications for assistance under the Act. The Board's staff totalled the amount potentially due Cabral for medical and wage loss as $2,563 and for Vasquez as $3,511.71. The Board, however, denied Cabral's application completely on the sole ground that he was not a resident of California under its aforementioned regulation 649.12. The Board accorded the same treatment to Vasquez' application upon the like ground that he had failed to establish his residency in California under the aformentioned regulation 649.12.[2]

---

[1]Regulation 649.12 reads, and has always read, as follows: "Resident of California, for purposes of this article, means citizen of this state as defined in Government Code section 241, or an alien residing in California who is in possession of a document issued by the United States Immigration and Naturalization Service which authorizes such person to reside in this state."

The substance of this regulation was proposed by the Attorney General when the Board indicated in these two matters its desire to codify its preexisting policy in this respect.

Unless otherwise indicated, all undesignated statutory code references are to the Government Code.

[2]At the time the Board adopted regulation 649.12 it also adopted regulation 649.13, which reads as follows: "It shall be the responsibility of the applicant to prove that the

Cabral came to the United States from Mexico illegally on September 17, 1974. For the next three years at least he lived in the same apartment in Alhambra, California and apparently continues to live in the Los Angeles area. In May 1977, he worked as a cook's assistant for a wage of $2.50 per hour. He has paid income tax to both the United States and the State of California. He intends to continue to live in California and is not under a federal deportation order.

Vasquez apparently entered the United States illegally in September 1973. He immediately took up residence in Los Angeles where he has apparently lived ever since. He has been employed essentially continuously since some two weeks after his arrival in Los Angeles. He has paid sales taxes to the State of California and property taxes indirectly to local subdivisions of the state through his payment of rent. He also paid federal income taxes in 1974 and 1975. He has always intended to continue to reside in Los Angeles. He has never been under a federal deportation order.

DISCUSSION

*Regulation 649.12 is invalid because it constitutes an unauthorized administrative amendment of the Act.*

 The Act, which contains several other definitions (see § 13960), does not define the words "resident of California" (see § 13961, subd. (a)), although residency in California is the fundamental requirement for eligibility for assistance under the Act. The Board has remedied this statutory omission by adopting the regulation at issue, namely, regulation 649.12, which we have quoted in full in our first footnote in this opinion. This administrative regulation, however, adds to the fundamental statutory requirement for eligibility for assistance under the Act of residency in California the further administrative requirement that such residence be lawful.[3]

---

applicant and the person whose injury or death gave rise to the application were residents of California, as defined in Section 649.12, at the time of the incident."

[3] We note that this requirement of legal residence in the state as a condition of eligibility for assistance under the Act goes beyond that prevailing generally in this state for categorical aid and medical assistance. An otherwise qualified alien qualifies for the latter "if he certifies that he is not under order for deportation." (Welf. & Inst. Code, § 11104.) It does coincide, however, apparently with the federal eligibility requirement

The Board's justification for so amending the statute that it administers is that residence under the Act must mean domicile as defined in section 244 of the Government Code. This interpretation of section 244 has long been recognized in this state. (See *Smith v. Smith* (1955) 45 Cal.2d 235, 239 [288 P.2d 497].) But the trial court did not interpret the section so broadly. It merely concluded that "[t]he term 'resident' as used in Government Code section 13959 is defined by Government Code section 244." In support of the trial court's narrower interpretation, we note that section 242 of the code states that persons in this state who are not its citizens are either citizens of other states or aliens and that section 243 of the code then says that "[e]very person has, in law, a residence," which section 244 then defines.

Nevertheless, for the purpose of the discussion that immediately follows, we shall assume that the Board's broader interpretation of section 244 is correct. The section, though, says nothing about lawful residence as such.[4] The Board argues, though, that under the Restatement Second of Conflict of Laws section 15(1), a domicile of choice may be acquired only by a person who is legally capable of changing his or her domicile and that neither Cabral nor Vasquez were or are legally capable of changing their respective domiciles from Mexico to California because of their illegal entries into the United States. The Restatement, though, places no such limitation upon the legal capacity of any person to change his or her domicile. Under the Restatement apparently anyone having the legal capacity to contract may change his or her domicile. (See Rest.2d Conf. of Laws, § 15, illus. 1, §§ 21, 22, 23; cf. Civ. Code, § 1556.)[5] Cabral and Vasquez, being presumably adults of sound mind, obviously possessed the legal capacity to change their domiciles from Mexico to California, and have done so.

---

for supplemental security income for the aged, blind and disabled. (42 U.S.C. § 1382c (a)(1)(B).)

[4]Section 244, in pertinent part, at all times material herein has read and now reads: "In determining the place of residence the following rules shall be observed:

"(a)　It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.

"(b)　There can only be one residence.

"(c)　A residence cannot be lost until another is gained.

"．．．．．．．．．．．．．．

"(f)　The residence can be changed only by the union of act and intent."

[5]This, of course, is the meaning generally associated with the term "legal capacity." (See Ballentine's Law Dict. (3d ed. 1969) p. 718, where the term is defined as "[t]he ability to make contracts . . . which are binding and beyond nullification for disability of the person arising from infancy, mental incompetency, etc.")

The Board appears to think that one may not be domiciled in a place where he or she may not remain *permanently*. But neither section 244 nor the Restatement requires an intent to remain permanently in order to establish a domicile in a particular place. (See Rest. 2d Conf. of Laws, § 18.) Thus, even if we assume, as we have for the purpose of this discussion, that the definitions of domicile in both section 244 and in the Restatement constitute the definition of "resident of California" as used in the Act, the Board's addition of the word "lawful" as a modifier of the term "resident of California" is clearly unwarranted.

 Eligibility for benefits under the Act, fixed by the Act, cannot be altered by the Board. (See § 11342.2; *Cooper v. Swoap* (1974) 11 Cal.3d 856, 864 [115 Cal.Rptr. 1, 524 P.2d 97]; *Morris v. Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; *Ayala v. Unemployment Ins. Appeals Bd.* (1976) 54 Cal.App.3d 676, 680 [126 Cal.Rptr. 210].) Consequently, regulation 649.12, being beyond the power of the Board to adopt, is invalid.

#### Disposition

The judgments under appeal are affirmed.

Potter, J., concurred.

**ALLPORT, J.**—I dissent.

In section 13959 the Legislature declared it to be in the public interest to indemnify and assist in the rehabilitation of those "residents of the State of California" who suffered loss as a result of crime. In section 13961 such a "resident" may apply for assistance. The act does not define the term resident but does authorize the State Board of Control to "make all needful rules and regulations consistent with the law for

---

As used in conjunction with the other requirements for establishing a domicile of choice "legal capacity" does not mean that the residence must be lawful since "[a] domicile may even be acquired at a home that is maintained unlawfully." (Leflar, American Conflicts of Law (3d ed. 1977) § 10, p. 16.) In fact, courts have stated that aliens residing in this country without the necessary federal documentation may nevertheless be domiciliaries of the states in which they reside. (*Rzeszotarski v. Rzeszotarski* (D.C.App. 1972) 296 A.2d 431, 434-436; *Seren v. Douglas* (1971) 30 Colo.App. 110 [489 P.2d 601, 603].) In this connection we have not been referred to anything in federal immigration law nor have we discovered anything indicating any lack of capacity under federal law on the part of Cabral and Vasquez to become domiciliaries of California.

the purposes of carrying into effect the provisions of this article." (§ 13968 subd. (a).) Accordingly the board enacted regulation 649.12 which in effect by definition eliminates illegal aliens from benefits under the act. The majority would strike down the requirement of legal residence as adding a requirement for eligibility not required by the act. I do not agree. Legality of residency does not add a requirement but rather, in further defining eligible persons, simply recognizes and reiterates the self-evident fact that, to be a *qualified* resident, one must ordinarily be legally within the state. While it may be true that an illegal alien may be found to have a residence, that is to be living within the state, and in some situations be entitled to statutory benefits,[1] such residency, standing alone, does not qualify one as a resident of the state within the contemplation of this act. In my opinion the requirement of legality contained in the regulation under attack does not "[add] to the fundamental statutory requirement for eligibility for assistance under the act of residency" but is merely a needful rule or regulation consistent with the law contemplated by section 13968.

I would reverse the judgments.

Petitions for a rehearing were denied December 19 and 31, 1980, and appellant's petition for a hearing by the Supreme Court was denied February 4, 1981.

---

[1]For example the workers' compensation law expressly defines covered employees to include unlawfully employed aliens. (Lab. Code, § 3351.)