789 So.2d 464 (2001)
Vicente MALDONADO, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 2D00-1120.
District Court of Appeal of Florida, Second District.
June 29, 2001.
*465 Perry Tanksley, Sarasota, for Appellant.
Michael C. Clarke and Eric M. Moore of Reynolds & Stowell, P.A., St. Petersburg, for Appellee.
ALTENBERND, Acting Chief Judge.
Vicente Maldonado appeals a county court judgment declaring that, for purposes of the Florida Motor Vehicle No-Fault Law, he was not a resident of Florida on August 19, 1993. The practical result of the jury's decision in this case is that Allstate Insurance Company (Allstate) will not need to pay PIP benefits to Manatee Memorial Hospital and the various physicians who treated Mr. Maldonado for injuries sustained when he was struck by a vehicle that Allstate insured.
The county court certified as a question of great public importance whether a person's status as an illegal alien should be admissible in this context. We conclude that the residence requirement in section 627.736(4)(d)(4), Florida Statutes (1993), is intended by the legislature as a pure residence requirement, and not as a requirement for domicile, legal residence, or citizenship. Thus, the trial court erred by allowing extensive evidence of Mr. Maldonado's status as an illegal alien and by *466 instructing the jury on this subject. For purposes of this statute, the claimant's status as an illegal alien was of marginal relevance. Moreover, as dramatically demonstrated by the overall tenor of this jury trial, any probative value of this evidence was clearly outweighed by its prejudicial effect.

I. THE ACCIDENT AND COUNTY COURT PROCEEDINGS
Mr. Maldonado was struck while riding a bicycle in Manatee County on August 19, 1993. He sustained significant injuries and was treated at Manatee Memorial Hospital. It is undisputed that he owns no automobile. Mr. Maldonado applied for PIP benefits under the Allstate policy covering the car that struck him. Allstate denied coverage on the ground that Mr. Maldonado was not a resident of Florida.
The basic facts concerning Mr. Maldonado's residency depend to some degree upon his credibility, but do not appear to be in great dispute. He lived in Texarkana, Texas, for about a year before moving to Manatee County in mid 1993. He testified he came to Florida intending to stay and hoping to find work. The accident occurred a month or two after he came to Florida. There is no evidence in the record that Mr. Maldonado had any plans to leave Florida at the time of his accident, or that he had any indicia of residency anywhere other than Florida. At the time of the trial, he had lived continuously in Manatee County for over three years.
The basic facts concerning Mr. Maldonado's citizenship are also not in great dispute. Mr. Maldonado was born in Mexico in 1961 and entered the United States illegally. He moved to Florida as an illegal alien who spoke little or no English. Accordingly, he had no valid social security number at the time of the accident, was not eligible for most welfare programs, and generally lived the anonymous lifestyle common to many of the poor, illiterate, illegal aliens who live in this country.
At trial, the only litigated issue was residency. Over the objection of Mr. Maldonado's counsel, Allstate made Mr. Maldonado's alien status a central feature in this trial. Allstate established that Mr. Maldonado "crossed over the river between Mexico and the United States." It cross-examined him extensively on his use of a fake social security number, his intention to work in Florida without appropriate work credentials, and his lack of a voter registration card. During closing argument, Allstate argued: "Folks, the question is, `Can a person be subject to deportation and be a resident of the State of Florida? Can a resident be deported?'" When the trial court sustained an objection to these rhetorical questions, it did not explain that the simple legal answer to these rhetorical questions was yes. Instead, the trial court stated that "we're getting into law." Immediately following this objection, Allstate's counsel read a federal statute about deportation, upon which the trial court had refused to give an instruction. The trial court gave a very basic jury instruction on the issue of residency. The instruction did not attempt to explain the distinctions between and among domicile, residency, and citizenship. Following the basic instruction, over Mr. Maldonado's objection, the trial court gave the following instruction:
You have heard that Plaintiff was an, quote, illegal alien, close quote, and was not a quote, legal, close quote, citizen or resident of the United States or of Florida. You are instructed that this evidence does not, standing alone, preclude or prevent Plaintiff from making a claim with Defendant Allstate Insurance for benefits. However, this evidence may *467 be considered by you for purposes of determining whether Plaintiff was a resident of Florida on August 19, 1993, together with all of the evidence presented in accordance with these instructions.
The jury answered a single interrogatory verdict to determine that Mr. Maldonado was not a resident of Florida at the time of this accident. The county court judge, who was troubled by this trial, decided to enter judgment on the jury's verdict and certify the admissibility of illegal alien status to this court.

II. THE TERM "RESIDENT" AND ITS RELATIONSHIP TO CITIZENSHIP AND DOMICILE DEPEND UPON THE CONTEXT IN WHICH THE TERM IS USED
The residency requirement at issue in this case is contained in section 627.736(4)(d)(4). It states:
(4) BENEFITS; WHEN DUE....
. . . .
(d) The insurer of the owner of a motor vehicle shall pay personal injury protection benefits for:
. . . .
4. Accidental bodily injury sustained in this state by any other person while occupying the owner's motor vehicle or, if a resident of this state, while not an occupant of a self-propelled vehicle, if the injury is caused by physical contact with such motor vehicle....
This requirement has remained unchanged since its enactment in 1971. See Ch. 71-252, § 7, Laws of Fla.
The issue in this case revolves around the definition of "resident" as used in this statute. The relevance of Mr. Maldonado's alien status can only be assessed once one determines the elements needed to establish residency.
In general, a person is a resident if he or she lives in a place and has no present intention of "removing themselves therefrom," i.e., leaving. Kiplinger v. Kiplinger, 147 Fla. 243, 2 So.2d 870, 873 (1941); see also Cruickshank v. Cruickshank, 420 So.2d 914, 915 (Fla. 1st DCA 1982) (holding that test for residency is physical presence in state and concurrent intent to remain). "Any place of abode or dwelling place constitutes a `residence,' however temporary it may be, while the term `domicile' relates rather to the legal residence of a person, or his home in contemplation of law. As a result, one may be a resident of one jurisdiction although having a domicile in another." Robinson v. Fix, 113 Fla. 151, 151 So. 512, 513 (1933) (quoting Warren v. Warren, 73 Fla. 764, 75 So. 35, 42 (1917)); see also Minick v. Minick, 111 Fla. 469, 149 So. 483, 488 (1933). Further, "residency" can allow for temporary "residence" in an "abode," as compared to a home. Robinson, 151 So. at 512.
Although domicile and residency are often used interchangeably, they are different legal concepts. Id. A "domicile" is a person's home. Wade v. Wade, 93 Fla. 1004, 113 So. 374 (1927). A person has a domicile at all times. Warren, 75 So. at 42. In some contexts, the phrase "legal residency" may be used in lieu of "domicile." See, e.g., Miller v. Gross, 788 So.2d 256 (Fla. 4th DCA 2000); Nicolas v. Nicolas, 444 So.2d 1118, 1120 (Fla. 3d DCA 1984).
"Citizenship," on the other hand, is a more clearly defined concept for purposes of one's status and membership in the United States of America. Sugarman v. Dougall, 413 U.S. 634, 652, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973). Citizenship implies membership in a community from which one receives a grant of certain political *468 rights and privileges and is often based upon one's connection to the jurisdiction by birth or naturalization. Id. In the context of citizenship in Florida or any other state, the term is often comparable to domicile or legal residence. See 20 Fla. Jur.2d Domicil & Residence § 6 (2000). Residency is not equivalent to citizenship, Lack v. Robineau, 9 F.2d 406, 407 (S.D.Fla.1925), and the relationship between one's national citizenship and one's residency is tenuous at best.
The term "residency" has a variety of meanings that are dependant upon the context in which the term is used. Wade, 113 So. at 375. The terms "reside" and "residence" have been accurately described as "chameleon-like" concepts taking their "color of meaning from the context in which they are found." Amco Ins. Co. v. Norton, 243 Neb. 444, 500 N.W.2d 542, 545 (1993);[1]see also Taylor v. U.S.A.A., 684 So.2d 890, 894 (Fla. 5th DCA 1996). Therefore, in the context of various statutes and rules of judicial procedure, it is not safe to assume that the term has a single meaning. See, e.g., Minick v. Minick, 149 So. at 487 (stating that, in some statutes, terms "residence" and "domicile" are used in different sense depending upon subject of statute).
Statutes often require that a person be a resident for at least a specific period in order to qualify for some legal benefit. For example, a couple cannot divorce in Florida unless one of them has been a resident for six months. See § 61.021, Fla. Stat. (2000). When a statute requires such a long period of residency, the requirement is more akin to a requirement that one establish a Florida domicile or legal residence. Other statutes tend to mix these concepts. For example, the MedAccess program is available to "every resident" of Florida, but the statutory definition of "resident" requires that one have a "domicile in the state for a period of at least 6 months." § 408.903, Fla. Stat. (2000). In order to qualify to vote, a person must be a "legal resident" of both the state and the county, and a citizen of the United States. § 97.041, Fla. Stat. (2000).[2] Thus, it is obvious that the meaning of "resident" in this case is quite dependent upon the purposes and goals of the statute in which the term is used.

III. FLORIDA'S MOTOR VEHICLE NO FAULT LAW
In this case, the term "resident" is used to accomplish the purposes and goals of the Florida Motor Vehicle No-Fault Law, which is codified at sections 627.730 through 627.7405, Florida Statutes (1993). Section 627.736(1) requires that virtually every insurance policy issued in Florida provide personal injury protection benefits for (a) the named insured, (b) relatives residing in the household of the named insured, (c) passengers in the insured automobile, and (d) "other persons struck by such motor vehicle." Thus, subsection (1) of this statute places no Florida residency restriction upon the receipt of these benefits.
The residency requirement contained in subsection 627.736(4)(d)(4) is primarily intended to determine which insurance company should pay personal injury benefits *469 to injured claimants and their health care providers. If a person has PIP coverage, the person's own insurance company pays. If a family member lives in a household with coverage and has no personal coverage, then the household coverage pays. Subsection (4)(d) is a catch-all provision to determine who pays PIP benefits to a person who has no Florida automobile and does not live in a household with the owner of a Florida automobile. In our motorized society, subsection (4)(d) addresses a small fraction of the people who live in Florida.
To understand why the legislature placed any state residency requirement in subsection (4)(d) of section 627.736 in 1971, one must look at the overall operation of the no-fault law. The law was very controversial in 1971 because section 627.737 created a "no-fault threshold" and took away a person's common law right to sue for any minor injury occurring in a Florida automobile accident. There were many lawyers, judges, and legislators who worried that such an enactment might be unconstitutional under article I, section 21, of the Florida Constitution. See generally John B. Gallagher, Note, No Fault Automobile Insurance: Is Eliminating Pain & Suffering a Viable Option Under the Florida Constitution?, 30 Fla. L.Rev. 445 (1978). Indeed, a no-fault threshold for property claims was found to be unconstitutional by the supreme court. See Kluger v. White, 281 So.2d 1 (Fla.1973).
The quid pro quo that allowed the nofault statute to survive this constitutional challenge was found both in the payment of personal injury benefits under section 627.736 and in the immunity provided under section 627.737. See Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla.1974) (reviewing statute and holding most of statute valid and constitutional). As the court in Lasky explained:
In exchange for [the claimant's] former right to damages for pain and suffering in the limited category of cases where such items are preempted by the act, he receives not only a prompt recovery of his major, salient out-of-pocket losseseven where he is at faultbut also an immunity from being held liable for the pain and suffering of the other parties to the accident if they should fall within this limited class where such items are not recoverable.
Id. at 14.
Florida car owners and drivers, as defendants, receive the benefit of the no-fault threshold. Tourists and many other nonresident car owners are not required to carry Florida automobile insurance and do not receive the benefit of the no-fault threshold. Because such transient car owners are not required to pay for PIP coverage, the legislature decided in 1971 that nonresidents should not be eligible for the coverage unless they were an occupant of a Florida automobile. This decision probably made it easier to uphold the constitutionality of the statute because a nonresident who had no automobile in this state was usually unaffected by the new law and did not lose access to any existing common law right. For the typical tourist who is struck as a pedestrian after 1971, the bad news is: You are not eligible to receive PIP benefits. The good news is: You can sue for all of your damages without regard to the no-fault threshold.
The Florida Motor Vehicle No-Fault Law places an obligation upon car owners to obtain this coverage if they are required to register their car in Florida. See § 627.733, Fla. Stat. (1993). A person must register a car in Florida if it is used on the roads of Florida. See § 320.02, Fla. Stat. (1993). A car must be registered even if the owner has no permanent residence. Id. Unless a car is already registered in another state, even a nonresident often must register a car in Florida. See §§ 320.37, 320.38, Fla. Stat. (1993).
*470 In this context, the legislature's creation of a residency requirement in subsection (4)(d)(4) of section 627.736 must be read narrowly as a pure residency requirement and not a requirement that includes elements of either domicile or citizenship. The legislature did not intend the receipt of PIP benefits and the corollary application of the no-fault threshold to be dependent upon a claimant's right to vote or his domicile or citizenship in Florida. Although this statutorily mandated insurance is not a government program, a more provincial definition would raise other questions of a constitutional dimension. See Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (finding welfare laws conditioning benefits on citizenship and imposing durational residency requirement on aliens violative of equal protection clause); see also Del Taco v. Workers' Comp. Appeals Bd., 79 Cal. App.4th 1437, 94 Cal.Rptr.2d 825 (2000) (finding workers' immigration status did not affect entitlement to temporary disability payments); Gene's Harvesting v. Rodriguez, 421 So.2d 701(Fla. 1st DCA 1982) (holding claimant's status as illegal alien did not preclude entitlement to benefits for work-related injury).
Essentially, Florida is attempting to limit the Florida No Fault Statute so as to minimize its impact on people who are residents of other states and who must comply with the insurance requirements of those other states. Nothing suggests that the legislature wants to deny PIP benefits to Florida's hospitals and doctors when they treat undocumented residents injured by a Florida car.

IV. RELEVANCE OF MR. MALDONADO'S STATUS AS AN ILLEGAL ALIEN
The only issue in this case is whether, at the time of the accident, Mr. Maldonado was physically present in Florida with no intention of leaving, and not whether Mr. Maldonado had established a home here or was a legal citizen or resident alien. Mr. Maldonado's status as an illegal alien does not suggest that he lacked the intent to remain in Florida at the time of the accident. In fact, having struggled so hard to get to Florida and being required to live on the fringes of society with no means of transportation other than a bicycle, his status may be somewhat probative of his claim to be a Florida resident. Allstate provided no evidence of another residence for Mr. Maldonado other than Florida. Allstate certainly provided no evidence that Mr. Maldonado was an itinerant bicyclist yearning to return to his Mexican homeland.
After reviewing the record, we conclude the evidence that Mr. Maldonado was an illegal alien was improperly admitted under section 90.403, Florida Statutes (1993). The evidence and instruction at trial concerning Mr. Maldonado's illegal alien status was unfairly prejudicial because it made Mr. Maldonado's alien status, rather than his residency, the focus of the jury's attention. His illegal alien status was employed by Allstate to prejudice the jury against him. Consequently, any limited probative value Mr. Maldonado's illegal alien status may have had was thoroughly outweighed by unfair prejudice, confusion of the issues, and misleading of the jury. § 90.403; see also State v. McClain, 525 So.2d 420, 421 (Fla.1988).
On remand, if a jury trial should again be necessary, we comment that the jury may need more complete instruction on the definition of "resident," so that they do not confuse that term with the concepts of domicile or citizenship.
Reversed and remanded.
*471 GREEN, J., Concurs.
NORTHCUTT, J., Concurs specially.
NORTHCUTT, Judge, Concurring.
I fully endorse Judge Altenbernd's wellreasoned opinion, but I write to offer two thoughts. First, although I believe that in some circumstances a PIP claimant's status as an alien can be marginally relevant to the issue of whether he is a Florida resident, I doubt the fact that he is an illegal alien could ever be relevant. Certainly, that fact implies that the Immigration and Naturalization Service would have the claimant leave his current place of abode. But, as Judge Altenbernd suggests, this has no bearing on the question of what the claimant intends.
Second, with due respect and sympathy for our judicial cousins in the wintry landlocked jurisdictions of Nebraska and Missouri, I would liken the concept of residence to the sands of a warm sunny beach, shifting in the gentle breezes and lapping tides.
NOTES
[1] Not to be outdone by Nebraska's animal analogy, its neighbor, Missouri, has stated: "We hesitate to essay any definition of `residence,' for the word is like a slippery eel, and the definition which fits one situation will wriggle out of our hands when used in another context or in a different sense." Missouri v. Tustin, 322 S.W.2d 179, 180 (Mo.Ct.App. 1959).
[2] This statute previously required a voter to be a "permanent resident." See § 97.041, Fla. Stat. (1987).