897 A.2d 1026

VICTOR MANUEL CABALLERO, PLAINTIFF–APPELLANT, v. RICARDO MARTINEZ; LEROY SMITH; KAREN L. SUTER, COMMISSIONER OF INSURANCE OF THE STATE OF NEW JERSEY; "JOHN DOE I–X" AND "JANE ROE I–X" (SAID NAMES BEING FICTITIOUS), DEFENDANTS, AND THE UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANT–RESPONDENT.

Argued November 7, 2005—Decided May 18, 2006.

*Victor M. Covelli* argued the cause for appellant.

*Jeffrey C. Maziarz* argued the cause for respondent (*Hoagland, Longo, Moran, Dunst & Doukas,* attorneys; *John C. Simons,* of counsel).

*Frank L. Corrado* argued the cause for amicus curiae, Association of Trial Lawyers of America–New Jersey (*Barry, Corrado, Grassi & Gibson,* attorneys; *Mr. Corrado* and *Joseph C. Grassi,* on the briefs).

Justice ZAZZALI delivered the opinion of the Court.

Plaintiff Victor Manuel Caballero, a national of Mexico, came to New Jersey as an undocumented alien when he was seventeen years-old. At the time, his brother and father were already in New Jersey, and his mother followed soon thereafter. All three also are undocumented aliens. Caballero's original purpose in coming to New Jersey was to work for at least five years to save enough money to live a comfortable life in Mexico. After he had lived in New Jersey for less than five months, Caballero was involved in an automobile accident while riding as a passenger in an uninsured, unregistered vehicle.

■ In this appeal, we must decide whether an undocumented alien is eligible to receive benefits from the Unsatisfied Claim and Judgment Fund (UCJF or Fund), *N.J.S.A.* 39:6–61 to –91, for injuries suffered in a motor vehicle accident. To obtain relief from the UCJF, a claimant must be a "Qualified person," meaning that he or she must be "a resident of this State." *N.J.S.A.* 39:6–62. The trial court held, and the Appellate Division affirmed, that an undocumented alien cannot form the requisite intent to establish residency for purposes of the UCJF. We reverse and hold that an undocumented alien can form the requisite intent. We further find that Caballero had such intent at the time of the

accident and therefore had established residency for purposes of entitlement to UCJF benefits.

## I.

Caballero's family first began immigrating to the United States in 1996, when his brother Sandro came from Mexico to New Jersey to live with cousins in Bradley Beach. Sandro came to New Jersey to have a better life, has continuously worked here, prefers to live in the State permanently, and has never returned to Mexico, although he recognizes that he will have to return if deported. Caballero's father arrived in 1999, settling in Belmar, New Jersey, close to Sandro's home. He also works in New Jersey and has never returned to Mexico. Caballero's mother arrived in 2003, at which time she moved in with her husband, plaintiff's father. Caballero himself illegally crossed the border into the United States in March 2001 and then flew from Los Angeles to New Jersey. He moved into the Bradley Beach apartment where his brother was living with two of their cousins.

Caballero testified that he came to New Jersey out of "necessity" because there were no good-paying jobs in the Mexican town where he lived. He stated that he intended to stay in New Jersey for at least five years to save money to help his family. On arrival, he commenced employment at a restaurant. After two months at the restaurant, Caballero switched to a job repairing computers, earning around $400 per week in contrast with the six dollars per day that he earned in Mexico. At the time, Caballero's co-worker, Ricardo Martinez, picked him up by automobile at around 5:00 a.m. each day to go to the computer store where Caballero worked fourteen to fifteen hours a day.

In August 2001, less than five months after his arrival in New Jersey and about two weeks after he began employment at the computer store, Caballero was on his way to work as a passenger in Martinez's vehicle when Martinez fell asleep at the wheel. The car veered off the roadway and struck a parked tractor-trailer. Caballero was transported to Jersey Shore Medical Center where

he underwent surgery for injuries to his abdomen and intestines. He remained hospitalized for approximately one week and did not return to work until six weeks after the accident. As a result of the accident, Caballero incurred approximately $38,300 in medical bills and $1,482 in net lost wages. Caballero was seventeen years-old when the accident occurred, did not own a car or have a driver's license, and was not covered by health or automobile liability insurance. Martinez's vehicle was neither registered nor insured, and none of Caballero's family members had insurance under which he could seek recovery.

Caballero is still employed at the same computer store but works fewer hours than before the accident and, because of his injury, can no longer lift heavy computers. Further, he cannot run, has difficulty sleeping because of abdominal pain, experiences pain in the area of his surgery during cold weather, and cannot regularly eat many of the foods that he enjoyed before the accident. Caballero's doctor certified that some of his injuries are permanent in nature. At the time that Caballero filed this appeal, he was living with his parents and girlfriend in Lakewood, New Jersey. He states that he will stay in New Jersey for as long as he can, "[a]s long as they don't deport me."

Caballero initiated claims against various individuals including the Commissioner of Insurance and the UCJF, a trust fund for victims of motor-vehicle accidents involving uninsured and hit-and-run motorists. Defendants moved for summary judgment dismissing Caballero's claim for noneconomic damages on the basis that he is not a "Qualified person" eligible for benefits under the UCJF because he is not a "resident" of New Jersey.

After conducting a plenary hearing on the matter, the trial court concluded that Caballero did not satisfy the UCJF standard for residency because his "tenuous ties to the State of New Jersey during the five months before the accident, coupled with his status as an illegal immigrant, evidence a relationship with the state that falls short of those of a bona fide resident." *Caballero v. Martinez*, 376 *N.J.Super.* 223, 227, 229, 869 *A.*2d 969 (Law Div.2004).

The court remarked that Caballero apparently had not brought significant belongings with him to New Jersey, could not produce a lease in his name, had not registered for school, and had not attempted to apply for resident alien status. *Id.* at 228, 869 *A.*2d 969. The court added that "[w]ithout the legal ability or authority to remain in the state, plaintiff was incapable of reasonably forming the requisite intent to remain for any length of time in New Jersey." *Id.* at 229–30, 869 *A.*2d 969 (internal quotation marks omitted).

Caballero appealed, asserting that the trial court disregarded the statutory language of the UCJF and existing case law in reaching its conclusion. He also claimed that the trial court's ruling that no undocumented alien could be a "resident" under the UCJF violated his equal protection rights. The Appellate Division rejected Caballero's contentions and affirmed for the reasons set forth in the trial court's decision. *Caballero v. Martinez,* 376 *N.J.Super.* 175, 176, 869 *A.*2d 939 (App.Div.2005). Judge Lisa dissented, reasoning that Caballero had "demonstrated by his acts and conduct an actual intention to continue to live in New Jersey for a substantial period of time." *Id.* at 177, 869 *A.*2d 939 (Lisa, J., dissenting). Caballero filed an appeal to this Court as of right pursuant to *Rule* 2:2–1(a). We granted amicus curiae status to the Association of Trial Lawyers of America—New Jersey.

II.

A.

The UCJF was enacted to provide " 'a measure of relief for persons who sustain losses or injury inflicted by financially irresponsible or unidentified owners or operators of motor vehicles, where such persons would otherwise be remediless.' " *Shaw v. City of Jersey City,* 174 *N.J.* 567, 572, 811 *A.*2d 404 (2002) (citing *Corrigan v. Gassert,* 27 *N.J.* 227, 233, 142 *A.*2d 209 (1958)). The Fund provides for recovery of both personal injury protection (PIP) benefits and bodily injury and property damage not covered

by PIP. *See Jimenez v. Baglieri,* 152 *N.J.* 337, 341–43, 704 *A.*2d 1285 (1998) (describing statutory framework of UCJF). It has separate provisions governing victims injured by uninsured motorists and those injured in hit-and-run accidents. *Id.* at 342, 704 *A.*2d 1285. To be eligible for UCJF benefits, a claimant injured in either manner must satisfy various requirements. Of relevance to this appeal, a claimant must be a "Qualified person," which the statute defines as

> a *resident* of this State or the owner of a motor vehicle registered in this State or a resident of another state, territory, or federal district of the United States or province of Canada or of a foreign country, in which recourse is afforded, to residents of this State, of substantially similar character to that provided for by this act.

[*N.J.S.A.* 39:6–62 (emphasis added).]

The UCJF is remedial in nature and acts as a substitute for "the kind of protection a liability insurance policy would provide." *Jimenez, supra,* 152 *N.J.* at 342, 704 *A.*2d 1285 (internal quotation marks and citations omitted). It was enacted out of a recognition that

> there is an economic hardship resulting to those persons referred to in the statute who, without any fault on their part, suffer losses through motor vehicle accidents. . . . [S]uch losses do in many cases have an adverse effect upon the public welfare in requiring the furnishing, at public expense, of hospital, medical and welfare care and attention.

[*Collins v. Yancey,* 55 *N.J.Super.* 514, 519, 151 *A.*2d 68 (Law Div.1959).]

In view of the UCJF's social purpose, this Court has stated that the statute should be "liberally construed to advance the remedy," and "[t]he literal sense of terms is not to have ascendancy over the reason and spirit of the expression as a whole." *Giles v. Gassert,* 23 *N.J.* 22, 34, 127 *A.*2d 161 (1956). Nonetheless, the Court has cautioned courts to give "due regard . . . to the protection of the Fund against fraud and abuse," *ibid.,* because the judiciary serves the important role of protecting the Fund's assets, *Jimenez, supra,* 152 *N.J.* at 350, 704 *A.*2d 1285 (stating that " '[i]n essence, the judiciary . . . is the guardian of the trust monies represented by our statutory Fund' ") (citations omitted).

## B.

With those principles in mind, we turn to the issue presented by this appeal—whether an illegal alien can be a "resident" of this State for purposes of obtaining UCJF compensation.

We begin by observing that we do not consider federal immigration law and policy in making our determination because, if we were to consider those sources, we would "assume (or possibly usurp) the very function of the Federal Immigration and Naturalization Service. The adjudication of potentially complex questions of federal immigration law and policy is better left to that Federal Agency." *Das v. Das,* 254 *N.J.Super.* 194, 200, 603 *A.*2d 139 (Ch.Div.1992). Defendants' argument that an alien's illegal status under federal law per se excludes the alien from establishing UCJF residency is, therefore, not relevant to our analysis. Rather, we interpret the meaning of the UCJF's term "resident" pursuant to our state law. *See, e. g., Bustamante v. Bustamante,* 645 *P.*2d 40, 42 (Utah 1982) ("A state must determine who qualifies as a resident under its own laws, and need not assist the Federal Government in enforcing the immigration and naturalization laws."); *cf. Das, supra,* 254 *N.J.Super.* at 200, 603 *A.*2d 139 ("The determination of a party's domicile ... must be resolved in accordance with state decisional law.").[1]

---

[1] Following oral argument, the Court requested supplemental briefing on the issue whether the federal Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), 8 *U.S.C.A.* §§ 1601–46, prohibits the provision of UCJF benefits to illegal aliens. PRWORA states that illegal aliens are not eligible for "any State or local public benefit" provided by "an agency of a State or local government or by appropriated funds of a State or local government." § 1621(a), (c). All parties to this litigation submitted that PRWORA does not apply to UCJF benefits, and we agree. The Fund is not an agency of a state or local government because it is administered by the New Jersey Property–Liability Guaranty Association, a private, non-profit entity comprised of member insurance companies. *N.J.S.A.* 17:30A–6; *N.J.S.A.* 39:6–64c. It is funded by fees levied on liability insurance companies doing business in New Jersey, not by state or local government appropriations. *N.J.S.A.* 39:6–63. Finally, UCJF benefits are not similar to the need-based benefits enumerated in § 1621(c)(1)(B), such as retirement and welfare assistance, which the statute

■ Under New Jersey law, the term resident, although present in many statutes, is not fixed in meaning. Instead, courts define the term by looking to the purpose of the statute and the context in which the term is found. *Continos v. Parsekian,* 68 *N.J.Super.* 54, 58–59, 171 *A.*2d 663 (App.Div.1961); *Collins, supra,* 55 *N.J.Super.* at 518, 151 *A.*2d 68. Other jurisdictions interpret the term resident in a similar manner. *See, e.g., State v. Tustin,* 322 *S.W.*2d 179, 180 (Mo.Ct.App.1959) ("We hesitate to essay any definition of 'residence,' for the word is like a slippery eel, and the definition which fits one situation will wriggle out of our hands when used in another context or in a different sense."); *Amco Ins. Co. v. Norton,* 243 *Neb.* 444, 500 *N.W.*2d 542, 545 (1993) (referring to residency as " 'chameleon-like' " concept that takes " 'color of meaning from the context in which [it is] found' ") (citation omitted).

■ Within the context of the UCJF, New Jersey courts have never determined whether an undocumented alien can qualify as a "resident." Those cases that have examined whether an individual qualifies under the UCJF's term "resident" focus on the individual's subjective intent to remain in New Jersey at the time of the accident. *See Collins, supra,* 55 *N.J.Super.* at 518–19, 522, 151 *A.*2d 68. A person may be a "resident" even if his or her intent to remain ultimately is not realized. *Ibid.* (finding that plaintiff, who lived and worked in New Jersey for five months prior to accident, qualified as "resident" despite fact that plaintiff went to live with sister in Virginia after accident). The case law also indicates that establishing residency requires a lower burden of proof than that of domicile because a person may have multiple residences but only one domicile. *Id.* at 520–21, 151 *A.*2d 68. Nonetheless,

---

cites as examples of benefits covered by PRWORA. Although an applicant's eligibility for need-based benefits is determined by his or her income-level, an applicant's eligibility for UCJF benefits is determined by the injuries he or she sustains in a motor-vehicle accident. *See also Rajeh v. Steel City Corp.,* 157 *Ohio App.*3d 722, 813 *N.E.*2d 697, 707 (2004) (holding that workers' compensation is not "public benefit" pursuant to PRWORA because workers' compensation is not similar to need-based benefits listed in PRWORA).

pursuant to the UCJF, the concept of residency connotes a "degree of permanence in contrast with the situation which obtains when a person is merely transiently staying at a given address and with the formed intention of shortly going elsewhere." *Continos, supra,* 68 *N.J.Super.* at 60, 171 *A.*2d 663 (finding that Greek citizen in possession of student visa and attending out-of-state university was not New Jersey "resident" under UCJF although student had obtained short-term summer employment in New Jersey); *see also Sullivan v. Saylor,* 79 *N.J.Super.* 1, 5–6, 190 *A.*2d 193 (App.Div.1963) (finding that plaintiff, who was domiciled in Pennsylvania but maintained summer residence in New Jersey, was not "resident" of New Jersey under UCJF). Although our courts have never addressed the issue under the UCJF, they have applied concepts of residency similar to those described above to determine that aliens without valid documentation can intend to remain in the State so as to render them "bona fide residents" under our divorce laws. *See Das, supra,* 254 *N.J.Super.* at 197–98, 603 *A.*2d 139.

Other jurisdictions also have determined that illegal aliens can qualify as residents under a variety of state statutes. *See, e.g., St. Joseph's Hosp. & Med. Ctr. v. Maricopa County,* 142 *Ariz.* 94, 688 *P.*2d 986 (1984) (emergency care); *Cabral v. State Bd. of Control,* 112 *Cal.App.*3d 1012, 169 *Cal.Rptr.* 604 (1980) (compensation for victims of violent crime); *Maldonado v. Allstate Ins. Co.,* 789 *So.*2d 464 (Fla.Dist.Ct.App.2001) (no-fault insurance). Additionally, some jurisdictions have characterized an immigrant seeking to reside in their states as possessing "dual intent,'" meaning an "intent to remain if that could be accomplished, or intent to leave if required by law." *Babouder v. Abdennur,* 41 *Conn.Supp.* 258, 566 *A.*2d 457, 461 (1989) (citing *Bustamante, supra,* 645 *P.*2d at 42). For example, in *Maldonado, supra,* the Florida Court of Appeals held that an illegal alien qualified as a "resident" for purposes of that state's no-fault insurance statute and thus could recover PIP benefits from the insurance carrier covering an automobile that struck him while he was bicycling. 789 *So.*2d 464. The court reasoned that the defendant insurance carrier "provided

no evidence that [the alien] was an itinerant bicyclist yearning to return to his Mexican homeland." *Id.* at 470.

## III.

### A.

 We hold that an undocumented alien's intent to remain in New Jersey can satisfy the intent required by the UCJF to qualify as a "resident." We recognize the apparent paradox that exists when an undocumented alien intends to remain in this State but that alien, because of his or her illegal status, is subject to deportation at any time. Yet, as noted, our test for residency under the UCJF is a subjective one based on a person's intent at the time of the accident. *See Collins, supra,* 55 *N.J.Super.* at 518–19, 522, 151 *A.*2d 68. The test does not require that a person's intent to remain be realized. *Ibid.* Consequently, the fact that an undocumented alien may some day be forced to return to his or her homeland does not necessarily defeat the intent to remain. That is especially true in light of the uncertain nature of deportation. *See St. Joseph's, supra,* 688 *P.*2d at 991 (finding illegal aliens can be "residents" under emergency care statute because " 'there is no assurance that a [person] subject to deportation will ever be deported' ") (alteration in original) (quoting *Plyler v. Doe,* 457 *U.S.* 202, 226, 102 *S.Ct.* 2382, 2399, 72 *L.Ed.*2d 786 (1982)); *Das, supra,* 254 *N.J.Super.* at 199, 603 *A.*2d 139 (commenting on "the uncertainty of knowing when, if ever, deportation proceedings will be commenced").

Construing the UCJF's term "resident" to include illegal aliens intending to remain in New Jersey also furthers the statute's remedial purpose of providing compensation to those injured through no fault of their own. This is not a situation in which the exclusion of a proposed class of persons is necessary to protect the Fund's assets. *Giles, supra,* 23 *N.J.* at 34, 127 *A.*2d 161. We doubt that undocumented aliens, who otherwise would not move to New Jersey, would be motivated to do so simply so that they could

collect from the UCJF if they happen to be injured by an uninsured or hit-and-run motorist. Indeed, the facts of this appeal stand in stark contrast with those in which the Fund's assets truly have been at risk. *See Jimenez, supra,* 152 *N.J.* at 350, 704 *A.*2d 1285 (finding imposition of verbal threshold requirement on claims for noneconomic damages in hit-and-run cases necessary to prevent fraud and abuse).

Further, had the Legislature intended to exclude undocumented aliens from the UCJF's purview, it could have done so expressly as it has in other statutes. *See N.J.S.A.* 30:4D–3(i) (Medicaid); *N.J.S.A.* 43:21–4(i)(1) (unemployment); *N.J.S.A.* 44:10–48a (Work First New Jersey program); *see also St. Joseph's, supra,* 688 *P.*2d at 992 ("The legislature is obviously aware of the considerable number of undocumented aliens in our state. Had it wished to limit emergency care to legal residents ... it could have supplied the missing adjective itself.").

## B.

Our review of the record in this appeal convinces us that, when the accident occurred, Caballero intended to live in the State for at least five years and, therefore, qualifies as a "resident" under the UCJF. Caballero was surrounded by nuclear and extended family members also living in New Jersey; he maintained steady employment at a job paying significantly more than the jobs available to him in Mexico, thereby working towards his goal of saving money to help his family; and there is no evidence that he was or ever has been the subject of deportation proceedings. *Cf. Buscema v. Buscema,* 20 *N.J.Super.* 114, 115, 89 *A.*2d 279 (Ch.Div.1952) (finding that alien subject to active deportation proceedings not "bona fide resident" under divorce laws). We agree with Judge Lisa that many of the factors that the Law Division found to be indicative of Caballero's lack of intent to remain in New Jersey, such as his alleged paucity of material possessions and his decision not to register for school despite his failure to complete a high school education, are more properly

understood as indications of poverty and the necessity to work. *Caballero, supra,* 376 *N.J.Super.* at 179, 869 *A.*2d 939 (Lisa, J., dissenting). As the court noted in *Maldonado, supra,* in examining whether the plaintiff-illegal alien qualified as a "resident," "having struggled so hard to get to Florida and being required to live on the fringes of society with no means of transportation other than a bicycle, [the plaintiff's] status may be somewhat probative of his claim to be a Florida resident." 789 *So.*2d at 470.

In addition, Caballero evidenced an intent to remain in the State that is significantly greater than that evidenced by those whose UCJF claims our courts have rejected, such as a person who only maintained a summer home here, *Sullivan, supra,* 79 *N.J.Super.* at 5–6, 190 *A.*2d 193, or a student attending college elsewhere who obtained short-term summer employment in New Jersey, *Continos, supra,* 68 *N.J.Super.* at 57, 60, 171 *A.*2d 663. Finally, although our inquiry focuses on Caballero's intent at the time of the accident, the fact that he has continued to live in New Jersey after the accident occurred in 2001 reinforces his claim that he intended to remain here. *See id.* at 60, 171 *A.*2d 663 (examining plaintiff's "acts and conduct, prior and subsequent to the accident in question").

## IV.

We conclude that Caballero established residency for purposes of entitlement to UCJF benefits. In so holding, we need not address Caballero's remaining equal protection argument. We reverse the judgment of the Appellate Division and remand the matter for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.